# EXHIBIT 1



# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, and ) | |
| ) | |
| STATE OF ILLINOIS, ) | **1:16-cv-3463** |
| ) | **Judge Rebecca R. Pallmeyer** |
| Plaintiffs, ) | C **Magistrate Judge Sheila M. Finnegan** |
| ) | |
| v. ) | |
| ) | |
| STARK LAW, LLC, an Illinois limited liability ) | |
| company, also doing business as STARK ) | |
| RECOVERY; ) | |
| ) | |
| STARK LEGAL, LLC, an Illinois limited liability ) | **FILED** |
| company; ) | |
| ) | **MAR 21 2016** |
| ASHTON ASSET MANAGEMENT, INC., an ) | |
| Illinois corporation; ) | THOMAS G. BRUTON |
| ) | CLERK, U.S. DISTRICT COURT |
| CHM CAPITAL GROUP, LLC, an involuntarily ) | |
| dissolved Illinois limited liability company, also ) | |
| doing business as CAPITAL HARRIS MILLER & ) | |
| ASSOCIATES; ) | |
| ) | |
| HKM FUNDING, LTD., an involuntarily dissolved ) | |
| Illinois corporation, in its capacity as manager of ) | |
| CHM CAPITAL GROUP, LLC; ) | |
| ) | |
| PACIFIC CAPITAL HOLDINGS, INC., an Illinois ) | |
| corporation, formerly known as CHARLES ) | |
| HUNTER MILLER & ASSOCIATES, INC., and ) | |
| also doing business as PACIFIC CAPITAL; ) | |
| ) | |
| HIRSH MOHINDRA, individually, as an owner, ) | |
| officer, director, member, and/or manager of ) | |
| STARK LEGAL, LLC, ASHTON ASSET ) | |
| MANAGEMENT, INC., CHM CAPITAL GROUP, ) | |
| LLC, HKM FUNDING, LTD., and PACIFIC ) | |
| CAPITAL HOLDINGS, INC., and also doing ) | |
| business as ASHTON LENDING, LLC; ) | |
| ) | |
| GAURAV MOHINDRA, individually, and as an ) | |

1

owner, member, and/or manager of STARK LAW, )
LLC, and STARK LEGAL, LLC; and )
)
PREETESH PATEL, individually, and as an owner )
and/or manager of ASHTON ASSET )
MANAGEMENT, INC., CHM CAPITAL GROUP, )
LLC, HKM FUNDING, LTD., and PACIFIC )
CAPITAL HOLDINGS, INC.; )
)
        Defendants. )
_____)

## COMPLAINT FOR PERMANENT INJUNCTION
## AND OTHER EQUITABLE RELIEF

Plaintiffs, the Federal Trade Commission ("FTC") and the State of Illinois, for their Complaint, allege:

1. The FTC brings this action under Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), and Section 814 of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692*l*, to obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and in violation of the FDCPA, 15 U.S.C. §§ 1692-1692p, in connection with abusive and deceptive debt collection practices.

2. The State of Illinois brings this action under Section 7 of the Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois Consumer Fraud Act"), 815 ILCS 505/7, and Section 9.7 of the Illinois Collection Agency Act, 225 ILCS 425/9.7, to obtain a preliminary or permanent injunction, restitution, and civil penalties against Defendants for engaging in deceptive acts or practices in violation of the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.*, and violations of Sections 4 and 9(a) of the Illinois Collection Agency Act, 225 ILCS 425/4 and 425/9(a).

2

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over the FTC's claims pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a), 53(b), and 1692*l*.

4. This Court has supplemental jurisdiction over the State of Illinois' claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this District under 28 U.S.C. §§1391(b)(1), (b)(2), (c)(1), (c)(2), and (d), and 15 U.S.C. § 53(b).

## PLAINTIFFS

6. The FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. The FTC also enforces the FDCPA, 15 U.S.C. §§ 1692-1692p, which prohibits deceptive, abusive, and unfair debt collection practices.

7. The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and the FDCPA, and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C. §§ 53(b) and 1692*l*(a). Section 814 of the FDCPA further authorizes the FTC to use all of the functions and powers under the FTC Act to enforce compliance by any person with the FDCPA. 15 U.S.C. § 1692*l*.

8. The State of Illinois is one of the fifty sovereign states of the United States. Lisa Madigan is the duly elected and qualified Attorney General acting for Plaintiff State of Illinois, and brings this action in her official capacity for and on behalf of the People of the State of

Illinois, pursuant to the provisions of the Consumer Fraud Act, 815 ILCS 505/1 *et seq.*, and her common law authority as Attorney General to represent the People of the State of Illinois.

## DEFENDANTS

9. Defendant Stark Law, LLC ("Stark Law"), is an Illinois limited liability company with its registered address at 7545 Irvine Center Drive, Irvine Business Center, Suite 200, Irvine, California 92618, and its principal place of business at 500 Quail Ridge Drive, Westmont, Illinois 60559. Stark Law also does business as Stark Recovery. Stark Law transacts or has transacted business in this district and throughout the United States.

10. Defendant Stark Legal, LLC ("Stark Legal"), is an Illinois limited liability company with its registered address at 7545 Irvine Center Drive, Irvine Business Center, Suite 200, Irvine, California 92618, and its principal place of business at 500 Quail Ridge Drive, Westmont, Illinois 60559. Stark Legal transacts or has transacted business in this district and throughout the United States.

11. Defendant Ashton Asset Management, Inc. ("Ashton"), is an Illinois corporation with its registered address and principal place of business at 500 Quail Ridge Drive, Westmont, Illinois 60559. Ashton transacts or has transacted business in this district and throughout the United States.

12. Defendant CHM Capital Group, LLC ("CHM Capital"), is an Illinois limited liability company that was involuntarily dissolved on October 9, 2015. Its registered address is at 208 South LaSalle Street, Suite 814, Chicago, Illinois 60604, and its principal place of business is at 500 Quail Ridge Drive, Westmont, Illinois 60559. CHM Capital also does business as Capital Harris Miller & Associates. CHM Capital transacts or has transacted business in this district and throughout the United States.

13. Defendant HKM Funding, Ltd. ("HKM Funding"), is an Illinois corporation that was involuntarily dissolved on May 9, 2014. Its registered address is at 215 Remington Boulevard, Unit E, Bolingbrook, Illinois 60440, and its principal place of business is at 500 Quail Ridge Drive, Westmont, Illinois 60559. HKM Funding is or was a manager of CHM Capital. HKM Funding transacts or has transacted business in this district and throughout the United States.

14. Defendant Pacific Capital Holdings, Inc. ("Pacific Capital Holdings"), is an Illinois corporation, formerly known as Charles Hunter Miller & Associates, Inc., with its registered address at 208 South LaSalle Street, Suite 814, Chicago, Illinois 60604, and its principal place of business at 500 Quail Ridge Drive, Westmont, Illinois 60559. Pacific Capital Holdings also does business as Pacific Capital. Pacific Capital Holdings transacts or has transacted business in this district and throughout the United States.

15. Defendant Hirsh Mohindra is or has been an owner, officer, director, member, and/or manager of Defendants Stark Legal, Ashton, CHM Capital, HKM Funding, and Pacific Capital Holdings, and also does business as Ashton Lending, LLC, a fictitious entity. At times material to this Complaint, acting alone or in concert with others, Defendant Hirsh Mohindra has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Among other things, Defendant Hirsh Mohindra has controlled Defendants' finances and business operations, met with employees, signed corporate papers, and regularly has been present at the business premises. Defendant Hirsh Mohindra resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

5

16.     Defendant Gaurav Mohindra is or has been an owner, member, and/or managing member of Defendants Stark Law and Stark Legal. At all times material to this Complaint, acting alone or in concert with others, Defendant Gaurav Mohindra has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Among other things, Defendant Gaurav Mohindra has controlled Defendants' finances and business operations, met with and hired employees, signed corporate papers, responded to consumer complaints and law enforcement inquiries, and regularly has been present at the business premises. Defendant Gaurav Mohindra resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

17.     Defendant Preetesh Patel is or has been an owner and/or manager of Ashton, CHM Capital, HKM Funding, and Pacific Capital Holdings. At all times material to this Complaint, acting alone or in concert with others, Defendant Preetesh Patel has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Among other things, Defendant Preetesh Patel has made decisions regarding Defendants' business operations, met with and managed employees, and regularly has been present at the business premises. Defendant Preetesh Patel resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

## COMMON ENTERPRISE

18.     Defendants Stark Law, Stark Legal, Ashton, CHM Capital, HKM Funding, and Pacific Capital Holdings (collectively, "Corporate Defendants") have operated as a common enterprise while engaging in the deceptive and unlawful acts and practices and other violations of

law alleged below. Defendants have conducted the business practices described below through an interrelated network of companies that have common ownership, officers, managers, business functions, and employees, a common office location, and that commingled funds. Because these Corporate Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below. Defendants Hirsh Mohindra, Gaurav Mohindra, and Preetesh Patel have formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Corporate Defendants that constitute the common enterprise.

## COMMERCE

19. At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS ACTIVITIES

20. Since at least 2011, and continuing thereafter, Defendants have engaged in a nationwide scheme to defraud consumers through the collection of payday loan debts that the consumers do not actually owe or that Defendants do not have the authority to collect. Defendants have contacted consumers by telephone and made a series of misrepresentations and threats to convince consumers to pay the alleged debts.

21. Beginning in or about February 2015, Defendants began conducting their scheme to defraud consumers through and using the name Stark Law. Through Defendants' use of the name Stark Law, consumers have believed that the consumers' alleged debts have been referred to a law firm or an attorney for collection.

### Collection of Debts that Consumers Do Not Actually Owe to Defendants

22. In conducting their scheme, Defendants have contacted consumers who have previously received payday loans, or who at least have inquired about or applied for a payday loan. In many instances, these consumers inquired about, applied for, or received their payday loans from online lenders.

23. Defendants have called consumers and informed them that they are delinquent on a payday loan or other debt. In numerous such instances, however, consumers are not delinquent on a payday loan or other debt as represented by Defendants. Many of the consumers that Defendants have called either never received payday loans at all or they previously repaid any payday loans in full.

24. Defendants have claimed to have authority to collect the debts, either on behalf of consumers' lenders or because Defendants purchased or were assigned the debts. In numerous instances, however, Defendants did not have authority to collect the consumers' debts, either on behalf of consumers' lenders or because Defendants purportedly purchased or were assigned the debts.

25. Defendants often have identified the name of a lender to whom consumers purportedly owe the alleged debt. In numerous instances, however, the identified lender is not owed any money by the consumer and, in many cases, never provided the consumer with a loan.

26. When Defendants have contacted consumers, they often possess, or claim to possess, extensive personal information about the consumers, such as their Social Security numbers, financial account information, addresses, and employment information. Defendants have used this information to convince consumers that they are a legitimate debt collector and that the consumers must immediately pay the allegedly delinquent debt.

### False Threats of Litigation

27. Defendants often have represented in their collection calls that the consumer owes a specified sum of money, which allegedly represents the delinquent amount due on the original loan, and they have demanded that the consumer immediately pay Defendants that amount. Defendants have threatened to sue or to initiate legal proceedings against consumers who do not pay Defendants the specified sum of money immediately. In numerous instances, Defendants have claimed that they will seek a judgment for the specified sum plus $2,000 or more for attorneys' fees and court costs. In truth, however, Defendants have no intention of taking, have no standing or authority to take, and do not take, legal action against these consumers.

28. In numerous instances while operating as Stark Law, Defendants have represented to consumers that an attorney has been assigned to the consumer's file, and that the attorney has the authority to initiate, or has already initiated, a lawsuit relating to the alleged debt. When consumers talk to the attorneys assigned to their files, those individuals often have used their status as attorneys to convince consumers that Defendants' threat of legal action is real. In numerous instances, however, the attorneys who work for Stark Law have no authority to, do not intend to, and do not initiate lawsuits against consumers who do not pay Defendants the alleged debts.

### False Threats of Criminal Repercussions for Failing to Pay the Debt

29. In numerous instances, Defendants have threatened that consumers will be, or already have been, "charged" with "defrauding a financial institution" and "passing a bad check" for failing to pay the alleged debt. Many consumers have reasonably interpreted Defendants' threat to mean that they have committed a crime. In truth, however, consumers have not been,

9

nor will be, "charged" with "defrauding a financial institution" and "passing a bad check." Defendants have no authority to, do not intend to, and do not "charge" consumers with such acts.

30. In numerous instances, Defendants also have threatened that consumers will face arrest and/or imprisonment if they fail to pay Defendants the alleged debt. In truth, however, consumers will not face arrest or imprisonment if they fail to pay Defendants. Defendants cannot have consumers arrested or imprisoned for non-payment of a private debt.

### Improper and Harassing Phone Calls

31. In many instances, Defendants have repeatedly called consumers even after they have been told to stop, or after Defendants became aware that it is inconvenient for the consumers to receive such calls.

32. In numerous instances, Defendants have repeatedly called consumers' places of employment, even though they knew, or should have known, that such calls are prohibited by consumers' employers.

33. In numerous instances, Defendants have called consumers multiple times per day and with such frequency over an extended period of time as to constitute harassment of the consumers or members of their families. For example, Defendants frequently have: (a) called consumers multiple times during the same day and over several days and weeks; (b) called consumers again despite having already spoken to the consumer earlier that day; and (c) called consumers' family members and left multiple voicemail messages in the same day.

34. In numerous instances, Defendants require the non-attorney debt collector callers to conceal their identity and instead use aliases when calling consumers. Such a practice prevents consumers from identifying the individuals responsible for the aforementioned harassing calls.

35. In numerous instances, Defendants have called third parties associated with consumers, such as consumers' relatives, friends, and employers, for the alleged purpose of obtaining location information about the consumers. In numerous of those instances, however, Defendants have already possessed consumers' location information, and their calls were intended only to harass the parties called. During the calls, Defendants often have disclosed to the third parties that the consumer owes an alleged debt. In numerous instances, Defendants also have called third parties multiple times, purportedly to acquire location information.

36. In some instances, Defendants have attempted to collect the consumer's alleged debt from third parties associated with consumers, such as consumers' relatives. Defendants also often have represented to those third parties that the consumer faces arrest or imprisonment for failing to pay the alleged debt.

37. In numerous instances, Defendants have made the calls to third parties described above before Defendants have contacted the consumer directly to collect the alleged debt. Defendants often call the third parties first in order to harass, embarrass, and disgrace the consumer into paying the alleged debt.

38. In numerous instances, Defendants have called consumers to collect an alleged debt when Defendants knew the consumer is represented by an attorney with respect to that consumer's debt, and Defendants knew or could have readily found the attorney's name and address.

### Failure to Provide Statutorily Required Notices

39. In numerous instances, Defendants have failed to provide consumers, either in the initial communication with consumers or in writing within five days after the initial communication, a notice containing: (a) the amount of the debt; (b) the name of the creditor to

whom the debt is owed; (c) a statement that unless the consumer disputes the debt, the debt will be assumed valid; and (d) a statement that if the consumer disputes the debt in writing, Defendants will obtain verification of the debt.

### Failure to Register with the State of Illinois as a Debt Collector

40.     Defendants Stark Law, Stark Legal, Ashton, CHM Capital, HKM Funding, Pacific Capital Holdings, Hirsh Mohindra, and Preetesh Patel (hereinafter collectively referred to as the "ICAA Defendants") were required to register and become licensed under the Illinois Collection Agency Act, 225 ILCS 425/1 *et seq.*, in order to lawfully engage in the collection of debt. The ICAA Defendants are not a licensed collection agency, and are therefore not authorized to engage in the collection of debt pursuant to the Illinois Collection Agency Act.

### Consumer Harm

41.     Many consumers have paid the alleged debts because they have been afraid of the threatened repercussions of failing to pay, because they have believed Defendants are legitimate and are collecting real delinquent debt, or because they have wanted the harassment to stop. Generally, consumers have paid Defendants using a credit or debit card.

42.     Since at least 2012, using the abusive and deceptive tactics described above, Defendants have collected and processed millions of dollars in payments for alleged debts that consumers do not owe or that Defendants have no authority to collect.

### Defendants' Marketing and Sale of Counterfeit Debt Portfolios

43.     In numerous instances, Defendants have marketed, distributed, and sold counterfeit debt portfolios that purport to identify consumers who have defaulted on payday loans of third-party payday lenders.

44. The counterfeit debt portfolios list consumer names and contact information along with Social Security numbers and financial account information. For each consumer identified, the portfolios provide detailed information about the purported payday loans, such as alleged original loan amounts, loan dates, repayment histories, and unpaid balances.

45. These debt portfolios are counterfeit because they list loans that the lenders have not, in fact, made to the identified consumers. Furthermore, Defendants have not purchased, or otherwise obtained, any rights to collect legitimate loan debts from those lenders, nor have they engaged in any transaction that authorizes them to collect, sell, distribute, or transfer any valid loans serviced by such lenders.

46. Defendants knew or should have known that it was likely that the portfolios would be given to debt collectors who would contact the listed consumers to demand payment on the purported debts.

47. Using information in debt portfolios marketed, distributed, and sold by Defendants, in numerous instances, debt collectors have contacted these consumers, demanded payment, and successfully induced consumers to pay the purported debts.

48. Consumers cannot reasonably avoid this harm. From the counterfeit portfolios, debt collectors obtain consumers' private personal information and sensitive financial information, including Social Security numbers, bank account numbers, and names of references. Debt collectors recite such information to convince consumers that the purported loan is legitimate despite the consumers having no possible record or recollection of the loan or lender. Given this detailed information, some consumers made payments on the purported debt.

49. Other consumers paid the purported debts to stop the debt collection calls, or because they were afraid of the repercussions of debt collectors reporting that they were delinquent in repaying a loan.

50. Defendants knew or should have known that they were not authorized to act as agents of the payday lenders identified in the debt portfolios, and that they did not have authority to market those lenders' debts.

51. Defendants knew or should have known that the debt portfolios listed debts that consumers did not owe.

52. In numerous instances, Defendants have profited from the sale of the counterfeit debt portfolios.

## VIOLATIONS OF THE FTC ACT

53. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

54. Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act. 15 U.S.C. § 45(a).

55. Acts or practices are unfair under Section 5 of the FTC Act if they cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition. 15 U.S.C. § 45(n).

### Count One by Plaintiff FTC

*False or Unsubstantiated Representations*

56. In numerous instances, in connection with the collection of alleged debts, Defendants have represented, directly or indirectly, expressly or by implication, that:

14

A. The consumer is delinquent on a payday loan or other debt that Defendants have the authority to collect;

B. The consumer has a legal obligation to pay Defendants;

C. The consumer has been, or will be, "charged" with "defrauding a financial institution" and "passing a bad check;"

D. The consumer will be arrested or imprisoned for failing to pay Defendants; and

E. Defendants will take formal legal action against a consumer who fails to pay, such as filing suit.

57. In truth and in fact, in numerous instances in which Defendants have made the representations set forth in Paragraph 56 of this Complaint, the representations have been false or have not been substantiated at the time the representations were made.

58. Therefore, Defendants' representations as set forth in Paragraph 56 of this Complaint are false or misleading, and constitute deceptive acts and practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## Count Two by Plaintiff FTC

### *Means and Instrumentalities to Mislead*

59. In numerous instances, in connection with their marketing, distribution, and sale of purported payday loan debt portfolios, Defendants have represented, directly or indirectly, expressly or by implication, that consumers listed in those portfolios owe unpaid payday loan debts, and that those who obtain the portfolios through Defendants have the right to collect debts listed in the portfolios.